**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2761-19

MARGARET ANNA CUSACK
CARE CENTER, INC., a
New Jersey non-profit
corporation d/b/a PEACE
CARE ST. JOSEPH'S,

      Plaintiff-Respondent,

v.

SHARON WILLIAMS, a/k/a
SHARON JONES WILLIAMS
and BLANCHE JONES,
individually and as fiduciary
for SHARON WILLIAMS,

      Defendants-Appellants.

_____

Submitted December 13, 2021 – Decided December 22, 2021

Before Judges Fasciale and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3667-18.

Vincent J. D'Elia, attorney for appellants.

Hardin, Kundla, McKeon & Poletto, PA, and John A. Smith, III, attorneys for respondent (James L. Fant and John A. Smith III, on the briefs).

PER CURIAM

Sharon Williams a/k/a Sharon Jones Williams (Williams), and Blanche Jones (Jones) individually and as fiduciary for Williams (collectively defendants), appeal from two January 28, 2020 orders: a denial of their motion for reconsideration of an earlier order dismissing their counterclaim for failure to serve an affidavit of merit (AOM); and a grant of summary judgment in favor of Margaret Anna Cusack Care Center, Inc. a New Jersey non-profit corporation d/b/a Peace Care St. Joseph's (plaintiff) against Williams and Jones jointly and severally. We affirm.

Williams suffered a stroke that rendered her paralyzed, unable to speak, and in need of constant nursing care. Williams, through her sister and fiduciary Jones, was admitted to plaintiff's licensed nursing care facility for short-term rehabilitative care on March 12, 2018. Jones was a named agent for Williams pursuant to a durable power of attorney.

Plaintiff alleges defendants learned that insurance would no longer cover the costs of Williams's care at plaintiff's facility, and they were required to pay for services rendered effective April 8, 2018. Defendants filed appeals of the

2

A-2761-19

non-coverage determination, which were later denied.  Plaintiff claims that it presented defendants with an admissions agreement around April 12, 2018, which would allow Williams to continue to receive care and maintenance as a private pay resident, but defendants refused to sign the agreement.  Thereafter, defendants refused to have Williams vacate the facility, and she remained there without making payments.

On September 17, 2018, plaintiff filed a collection action against defendants, jointly and severally, for the balance of the payments, amounting to $61,920 with charge increases at a per diem rate of $360.  Plaintiff alleged Jones breached her fiduciary duty to Williams by failing to pay for the care after being denied insurance coverage and failing to provide an alternative living arrangement for Williams.

In their amended answer, defendants denied plaintiff's allegations and claimed plaintiff never advised them regarding a change in insurance coverage. Jones maintained that she believed insurance covered Williams's care. Defendants also filed a counterclaim, alleging plaintiff was professionally negligent in failing to provide quality care, specifically because Williams suffered from bed sores and had not received speech therapy.   Williams

A-2761-19

remained at plaintiff's facility until January 23, 2019, when she was admitted to Jersey City Medical Center to treat infected bed sores.

On June 13 and 17, 2019, the case management judge held Ferreira[1] conferences with the parties. Jones appeared pro se. Counsel for defendants was present at both conferences but did not make a formal appearance on their behalf. Following the June 17 conference, the case management judge entered an order requiring defendants to serve an AOM by no later than August 12, 2019.

On August 12, 2019, counsel entered a notice of appearance on behalf of defendants and supplied a certification from Jones, in which she claimed that she requested plaintiff furnish Williams's medical records months ago and had not received them. The August 12, 2019 deadline passed without defendants serving an AOM.

On August 27, 2019, plaintiff filed a motion to dismiss defendants' counterclaim for failure to file the AOM, pursuant to N.J.S.A. 2A:53A-29. On September 24, 2019, defendants filed a certification from Jones in opposition to plaintiff's motion to dismiss with an attached and unfiled AOM. The attached AOM was dated August 12, 2019, and executed by a registered nurse. Defendants argued they could not meet the AOM deadline because plaintiff

---

[1] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003).

failed to provide Williams's medical records. The motion judge heard oral argument on the motion to dismiss, entered an order granting plaintiff's motion to dismiss the counterclaim for failure to serve a timely AOM, and rendered a written decision.

On October 21, 2019, defendants filed a motion for reconsideration of the order. Plaintiff subsequently filed a motion for summary judgment as to its collection action. On January 28, 2019, the motion judge denied defendants' motion for reconsideration and granted plaintiff's motion for summary judgment. The summary judgment order entered judgment against defendants for $115,545.60, jointly and severally.

On appeal, plaintiff raises the following points for this court's consideration:

> POINT I
>
> IN THE INTERESTS OF JUSTICE, THIS COURT SHOULD GRANT BLANCHE JONES'[S] MOTION FOR AN ORDER BY THIS COURT, NUNC PRO TUNC, TREATING HER DIRECT APPEAL HEREIN, OF THE ORDER GRANTING SUMMARY JUDGMENT, AS AN APPEAL OF AN INTERLOCUTORY ORDER. (Raised in concurrent motion to this [c]ourt).

POINT II

GRANTING SUMMARY JUDGMENT AGAINST BLANCHE JONES, JOINTLY AND SEVERALLY WITH SHARON WILLIAMS, WAS AN ABUSE OF DISCRETION, AND ERROR OF LAW, BY THE [JUDGE] BELOW, AS (A) BLANCHE JONES'[S] SOLE ROLE WAS THAT OF A FIDUCIARY; (B) N.J.S.A. 30:13-3.1(a)(2) EXPRESSLY PROHIBITS A NURSING HOME FROM SEEKING TO IMPOSE SUCH LIABILITY; AND (C) A FIDUCIARY IS NOT PERSONALLY LIABLE TO THIRD PARTIES FOR DEBTS OF THE PRINCIPAL, UNDER NEW JERSEY LAW. (Not raised by either party below).

POINT III

PERMITTING BLANCHE JONES, WHO WAS NOT AN ATTORNEY, TO REPRESENT HER SISTER, SHARON WILLIAMS, AS ATTORNEY-IN-FACT, PRO SE, WAS PREJUDICIAL TO SHARON WILLIAMS, WRONGLY PERMITTED WITH DELIBERATE INDIFFERENCE, BY THE ATTORNEYS FOR [PLAINTIFF] AND AN ABUSE OF DISCRETION BY THE [JUDGE] TO PERMIT I[T]S CONTINUANCE. (Not raised by either party below).

POINT IV

THE [JUDGE] BELOW ABUSED [HER] DISCRETION IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF, DISMISSING MS. [WILLIAMS'S] COUNTERCLAIMS WITH PREJUDICE, INSTEAD OF FINDING SUBSTANTIAL COMPLIANCE BY MS. WILLIAMS WITH N.J.S.A. 2A:53A-27, AND FAILING TO CONSIDER THE PREJUDICE TO MS. WILLIAMS

6

FROM [PLAINTIFF'S] FAILURE TO PROVIDE MEDICAL RECORDS TO MS. WILLIAMS, AND FROM THE EXTENDED ENGAGEMENT OF MS. WILLIAMS IN EXTENSIVE LITIGATION, WHEN SHE WAS NOT REPRESENTED BY AN ATTORNEY AT LAW.

POINT V

GRANTING SUMMARY JUDGMENT, WITHOUT HOLDING A PROOF HEARING OR TRIAL ON THE ISSUE OF DAMAGES, WAS AN ABUSE OF DISCRETION BY THE [JUDGE] BELOW, WHERE PLAINTIFF SOUGHT AN AWARD OF $115,545 IN A QUANTUM MERUIT CLAIM, UPON A COMPLAINT THAT ORIGINALLY SOUGHT ONLY $61,920, AND WHERE THERE WAS EVIDENCE OF THE FAILURE OF [PLAINTIFF] TO PROVIDE THE SKILLED NURSING CARE THAT IT WAS OBLIGATED TO PROVIDE TO MS. WILLIAMS, INCLUDING THE FAILURE TO OBSERVE AND TREAT MS. WILLIAMS'[S] SEVERELY INFECTED BED SORES.

We disagree and affirm.

I.

We begin by addressing defendants' request to treat their direct appeal as an appeal of an interlocutory order in the interests of justice. Under Rule 2:2-3(a)(1), a litigant may appeal as of right from "final judgments of the Superior Court trial divisions." "A judgment is final for purposes of appeal if it 'dispos[es] of all issues as to all parties.'" Wein v. Morris, 194 N.J. 364, 377

7

(2008) (alteration in original) (quoting Hudson v. Hudson, 36 N.J. 549, 553 (1962)).  This court has discretion to grant leave to appeal nunc pro tunc when a party fails to seek leave to appeal an interlocutory order.  See Medcor, Inc. v. Finley, 179 N.J. Super. 142, 144-45 (App. Div. 1981).  We conclude the two orders are final judgments and will address the matter on the merits.

## II.

Defendants argue that the judge erred in permitting Jones to appear pro se.  Defendants contend that the judge had a duty to protect Williams and failed, and further allege plaintiff's counsel engaged in a "deliberate effort" to take advantage of defendants by serving detail interrogatories and notices to admit to Jones as a pro se litigant.  Defendants concede that they raise this issue for the first time on appeal.  Issues not raised below "will ordinarily not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest."  N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 339 (2010).  Nonetheless, we reject the merits of defendants' argument.  There is no support for the contention that the judge erred by allowing Jones to appear pro se, especially because counsel was present at the Ferreira conferences and appeared on behalf of defendants from that point forward.

A-2761-19

III.

The judge followed the applicable law in denying reconsideration of the previous order dismissing the counterclaim. We review a trial judge's denial of a motion for reconsideration for abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)).

A.

The AOM statute "requires plaintiffs alleging malpractice against a licensed professional to include an affidavit from a medical expert in their filing" to demonstrate "there exists a reasonable probability the standard of care exercised in the alleged malpractice fell outside the acceptable professional or occupational standards." Cowley v. Virtua Health Sys., 242 N.J. 1, 8 (2020). The statute prescribes the deadlines for filing an AOM:

> [i]n any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within [sixty] days following the date of filing of the answer to the complaint by the defendant, provide

each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The [judge] may grant no more than one additional period, not to exceed [sixty] days, to file the affidavit pursuant to this section, upon a finding of good cause.

[N.J.S.A. 2A:53A-27.]

Failure to comply with the statute "shall be deemed a failure to state a cause of action."  N.J.S.A. 2A:53A-29.

Defendants filed their counterclaim against plaintiff alleging professional negligence on October 15, 2018, and plaintiff filed its answer on November 19, 2018.  N.J.S.A. 2A:53A-27 requires the AOM be filed within sixty days following the date of the answer; thus the deadline for the AOM was January 18, 2019.  The case management judge held two Ferreira conferences in June 2019, amended the deadline, and issued an order requiring defendants to serve the AOM by no later than August 12, 2019.  Plaintiff's counsel certified on August 27, 2019, in support of the motion to dismiss with prejudice, that plaintiff did not receive the AOM by August 12.

On September 24, 2019, defendants filed opposition to plaintiff's motion to dismiss the counterclaim with an attached, unfiled AOM executed by a

registered nurse.  The AOM was dated August 12, 2019.  Defendants did not comply with the AOM statute, warranting dismissal of their counterclaim; however, they argue that the motion judge should have used her discretion in finding substantial compliance with the statute.

Our Court has recognized that the doctrine of substantial compliance applies to the AOM statute.  Fink v. Thompson, 167 N.J. 551, 561 (2001).  The defaulting party may invoke the doctrine of substantial compliance if the party demonstrates the following:

> (1) lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute.
>
> [Ibid. (quoting Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 239 (1998)).]

"Establishing those elements is a heavy burden."  Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 357 (2001).

Defendants justify their non-compliance by arguing plaintiff did not timely deliver Williams's medical records, and Jones was representing defendants pro se.  Jones certified that defendants' other sister made a form request for records at plaintiff's facility "many months" before August 12, 2019.

11

Plaintiff provided a March 12, 2019 letter and FedEx receipt showing that they sent medical progress records to an agent of Stark & Stark, a law firm which plaintiff claims represented defendants at that time. Defendants counter that they never retained Stark & Stark at any point during the litigation, and they never received the records. Jones sent a written request to plaintiff for records on August 6, 2019. Six days later, on August 12, Jones received a response dated August 9 from plaintiff's facility that the records were available for pick-up at a cost of $200 for the copies.

Defendants failed to demonstrate the series of steps taken to comply with the statute, general compliance with the statute, or a reasonable explanation of why there was not strict compliance. See Fink, 167 N.J. at 561. A verbal request made "many months" ago is insufficient to demonstrate a series of steps taken towards compliance with the statute. Furthermore, defendants' counsel was present at the Ferreira conferences and fully aware of the revised deadline, even if he was not making a formal appearance. The motion judge properly concluded, both on the motion to dismiss and on the motion for reconsideration, that defendants did not offer "a reasonable explanation of why the [AOM] is 120 days overdue, in violation of a court order" despite defendants having "had

ample time to secure the necessary records and documents, and to submit the Affidavit."

B.

Defendants also contend the motion judge erred by dismissing the counterclaim with prejudice. Dismissal for failure to comply with the procedural requirements of the AOM statute should result in dismissal with prejudice unless extraordinary circumstances exist. Allan J. Cornblatt, P.A., 153 N.J. at 242. "[C]arelessness, lack of circumspection, or lack of diligence" are not extraordinary circumstances. Palanque v. Lambert-Woolley, 168 N.J. 398, 404-05 (2001) (quoting Burns v. Belafsky, 326 N.J. Super. 462, 470 (App. Div. 1999)). Here, defendants' belated written request to plaintiff for medical records on August 6, only six days before the revised deadline to file the AOM, reflects a lack of diligence and does not qualify as an extraordinary circumstance.

C.

Finally, defendants argue that the "mere appearance in a nursing home patient of infected bed sores" falls under the common knowledge doctrine; thus the counterclaim did not require an AOM. Defendants did not raise their common knowledge argument below, but we address its merits by providing these brief remarks.

A-2761-19

There exists an exception to the AOM statute where "the alleged conduct or failure to act, if accepted as true, would be readily recognizable, by a person of average intelligence, as a failure to exercise the appropriate standard of care." Cowley, 242 N.J. at 8. In a common knowledge case, "an expert is not needed to demonstrate that a defendant breached a duty of care." Hubbard v. Reed, 168 N.J. 387, 394 (2001). The common knowledge doctrine "applies where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'" Ibid. (quoting Est. of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)). The exception is construed "narrowly in order to avoid non-compliance with the [AOM] statute." Id. at 397.

The professional negligence issues, in this case, are not within the average lay person's ordinary understanding and experience. Defendants' counterclaim involves inadequate care in nursing, a lack of speech therapy, and wound care. These allegations require the benefit of expert testimony from medical professionals and are not within the common knowledge exception. Therefore, defendants' counterclaim was properly dismissed for failure to comply with the AOM statute.

IV.

Defendants argue the judge erred in granting summary judgment in favor of plaintiff. An appellate court reviews a trial judge's decision on a summary judgment motion de novo. Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 599 (App. Div. 2014). We utilize the same standard as the motion judge and consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

A.

Defendants argue the judge erred in granting summary judgment personally against Jones, jointly and severally with Williams, because she was acting solely as a fiduciary for Williams. Defendants argue that plaintiff, as a nursing care facility subject to N.J.S.A. 30:13-3.1(a)(2), is prohibited from requiring an agreement with a resident's fiduciary, under a durable power of attorney, to impose personal liability on the fiduciary. Defendants contend that there is not valid authority imposing direct personal liability on a fiduciary to a third party for failure to pay an obligation of the principal. Defendants concede

that they did not raise this issue below. Nonetheless, we reject defendants' contention on the merits and conclude the judge did not err in imposing joint and several liability against Jones and Williams.

Under N.J.S.A. 30:13-3.1(a) a nursing home may not

> require a third party guarantee of payment to the facility as a condition of admission or expedited admission to, or continued residence in, that facility; except that when an individual has legal access to a resident's income or resources available to pay for facility care pursuant to a durable power of attorney, order of guardianship or other valid document, the facility may require the individual to sign a contract to provide payment to the facility from the resident's income or resources without incurring personal financial liability.

Plaintiff argues that its pursuit of Jones for joint and several liability is not as a guarantor as prohibited under N.J.S.A. 30:13-1.1(a)(2), but rather Jones's personal liability as a fiduciary. In its original compliant, plaintiff alleged that Jones was liable because she breached her fiduciary duty owed to Williams and plaintiff as a third party.

Under N.J.S.A. 3B:14-35, "[i]f the exercise of power concerning the estate is improper, the fiduciary is liable to interested persons for damage or loss resulting from breach of [her] fiduciary duty to the same extent as a trustee of an express trust." In statutorily-sanctioned and tort causes of action, our Court recognizes that an executor or other fiduciary may be liable to a third party when

16

she breaches her duty to secure or protect estate assets. In re Est. of Stockdale, 196 N.J. 275, 305 (2008).

The durable POA gave Jones "the powers . . . with the understanding that they will be exercised for [Williams's] benefit, on [her] behalf, and solely in a fiduciary capacity." Further in the POA, in the paragraph titled "Reliance by Third Parties," Williams agreed to "hold harmless any third party who acts in reliance on this power for damages or liability incurred as a result of that reliance." The motion judge noted that Jones admitted to being Williams's POA and having access to Williams's bank account. The judge also found that plaintiff was obligated by law to continue housing Williams instead of discharging her even after months of non-payment because Jones "gave up" Williams's apartment, leaving her without a viable housing alternative.

We are not persuaded by defendants' argument that Jones cannot be held liable as a fiduciary under N.J.S.A. 30:13-3.1(a)(2) because plaintiff's pursuit of joint and several liability was not based on guarantor liability, but instead Jones's breach of fiduciary duty for failure to secure assets to pay for Williams's care. From plaintiff's statement of material facts, which defendants never provided a counterstatement to, there is sufficient evidence that Jones failed to secure assets properly on behalf of Williams. Jones was informed that the

insurance would no longer cover Williams's stay at plaintiff's facility but did nothing when her status changed to a private pay resident. Jones terminated Williams's permanent housing, thus preventing her discharge from plaintiff's facility and resulting in more debt. Jones did not apply to Medicaid on Williams's behalf to cover the expenses of plaintiff's care. The judge did not err in concluding Jones was jointly and severally liable with Williams for the amount owed to plaintiff.

B.

Defendants argue that the judge erred in awarding $115,545.60 to plaintiff on summary judgment without conducting a proof hearing as to damages because the original complaint demanded only $61,920, and this amount was disputed based on the alleged inadequate care.

On a motion for summary judgment, "if a case involves no material factual disputes, the [judge] disposes of it as a matter of law by rendering judgment in favor of the moving or non-moving party on the issue of liability or damages or both." Brill, 142 N.J. at 537. Since this is a collection action, plaintiff's cause of action relies on the equitable doctrine of quantum meruit. "[Q]uantum meruit allows 'the performing party to recoup the reasonable value of services rendered.'" EnviroFinance Group, LLC v. Env't Barrier Co., LLC, 440 N.J.

18

Super. 325, 349 (App. Div. 2015) (quoting <u>Weichert Co. Realtors v. Ryan</u>, 128 N.J. 427, 438 (1992)). The elements of quantum meruit are "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." <u>Ibid.</u> (quoting <u>Starkey, Kelly, Blaney & White v. Est. of Nicolaysen</u>, 172 N.J. 60, 68 (2002)).

As defendants did not submit a counterstatement of material facts as procedurally required, the judge appropriately accepted plaintiff's statement of material facts, which established that: Jones, as POA, understood and consented to Williams's housing and care at plaintiff's facility; Williams received those services; and Jones knew that insurance was not covering Williams's care. Plaintiff provided a bill from September 7, 2018, listing defendants' balance as $61,920 for Williams's room and board from April 2018 to September 2018. In her response to plaintiff's request for admissions, Jones could "neither" admit or deny the total amount owed to plaintiff was $61,920 and that Williams's care continued to be charged at a per diem rate of $360. Plaintiff provided an October 18, 2019 bill to defendants totaling $115,545.60 with a list of charges for room and board and late fees, as well as some payments received from insurance from April 2018 to September 2019. Although the judge noted that plaintiff's "bills

are not particularly detailed or in-depth in their description of services rendered," ultimately, summary judgment was appropriate because the rates are reasonable and customary, and defendants did not provide any evidence to contradict their validity.

We reject defendants' argument that a proof hearing is required because the original complaint only requested $61,920. Plaintiff provided an updated bill in support of its motion for summary judgment listing the charges, which totaled $115,545.60. Plaintiff's complaint clearly stated the charges would increase at a daily rate, and the bill reflected room and board and late fees from the complaint's filing to Williams's discharge in January 2019.

Defendants allege that the charges are in dispute because of alleged negligence, but their counterclaim on that issue was dismissed with prejudice, and they have not submitted any evidence to prove the bills are inaccurate. Defendants did not raise a genuine issue of material fact as to the validity of the amount owed; therefore, the judge correctly rendered judgment as to liability and damages.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2761-19